UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND L. OUBICHON,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS CAREY, et al.,<br><br>Defendants. | No. 2:06-cv-2749-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in an action brought under 42 U.S.C. § 1983. He asserts an Eighth Amendment conditions-of confinement claim and a Fourteenth Amendment equal protection claim. He alleges that defendants violated his federal rights by exposing him to a clogged, overflowing toilet that caused him to slip, fall, and break his wrist. Plaintiff further alleges that defendants purposefully discriminated against him when, in the wake of a riot, they confined him and other Black inmates to a chow hall with a nonworking toilet.

Defendants move for summary judgment. ECF No. 66. Generally, they argue that plaintiff's claims fail because (1) his conditions-of-confinement claim is a disguised negligence claim and (2) he failed to show discriminatory purpose. As discussed below, defendants' motion for summary judgment should be granted.

/////

1

**I.  Background**

    **A.  Factual Background**

This section is based on evidence in the summary judgment record. Unless otherwise noted, the facts recited herein are not reasonably in dispute.

Plaintiff is a state inmate who was incarcerated at California State Prison, Solano ("SOL") when the events underlying his third amended complaint took place. ECF No. 69-1 ¶ 1. At all relevant times, defendant Harmer worked at SOL as a registered nurse ("RN"). ECF No. 66-7 ¶ 2. The remaining defendants worked at SOL as correctional officers of various ranks. *See, e.g.*, ECF No. 66-6 ¶ 2; ECF No. 66-8 ¶ 2.

On March 9, 2005, at around 2:30 p.m., a large-scale fight erupted between groups of Black and Northern Hispanic inmates on SOL's main yard. ECF No. 66-4 ¶ 3; ECF No. 66-5 ¶ 3; ECF No. 66-8 ¶ 3; ECF No. 69-1 ¶ 3. Approximately 102 inmates participated in the riot. ECF No. 66-8 ¶ 3; ECF No. 69-1 ¶ 4. Although plaintiff was on the yard when the riot broke out, there is no evidence that he participated in it. ECF No. 69-1 ¶¶ 36, 38; ECF No. 69-2 ¶ 5.

The riot created an emergency situation at SOL. ECF No. 66-5 ¶ 7; ECF No. 66-6 ¶ 8; ECF No. 66-8 ¶ 6. In response, SOL staff separated inmates suspected of participating in the riot by race. ECF No. 66-4 ¶ 5; ECF No. 69-1 ¶ 13. Black inmates, including plaintiff, were taken to Chow Hall 3. ECF No. 69-1 ¶ 14. Northern Hispanic inmates were taken to Chow Hall 4. ECF No. 66-4 ¶ 5. Defendant Parks, who worked at SOL as a correctional lieutenant, ECF No. 66-4 ¶ 2, made the decision to separate the Black and Northern Hispanic inmates, *id.* ¶ 5. *See also* ECF No. 66-8 ¶ 4; ECF No. 66-5 ¶ 4; ECF No. 66-6 ¶ 4.

Plaintiff declares that the toilet in Chow Hall 3 was out of order. ECF No. 69-1 ¶ 16. Plaintiff further declares that he informed defendants Orrick and Parks that the toilet was out of order. *Id.* ¶¶ 16–17. According to plaintiff, Orrick said that she could not do anything about the problem, *id.* ¶ 16, and Parks said that the Black inmates had "nothing coming" because they participated "in a riot," *id.* ¶ 17.

Additionally, plaintiff declares that the Black inmates started urinating and defecating in the malfunctioning toilet. *Id.* ¶ 18. As a result, according to plaintiff, the toilet overflowed onto

the floor in Chow Hall 3.  *Id.*  Plaintiff adds that, on his way to use the toilet, he "slipped and fell" on water and excrement, which seriously injured his wrist and hurt his back.  *Id.* ¶ 19.

Plaintiff declares that he told defendant Maloney about his need for medical attention.  *Id.* ¶ 21.  According to plaintiff, Maloney told him that "there was nothing he could do at that time because there was an institutional count being conducted."  *Id.* ¶ 22.

Around 5:00 p.m., shortly after plaintiff fell, another fight broke out between Black and Northern Hispanic inmates.  *Id.* ¶ 23; *see also* ECF No. 66-5 ¶ 7; ECF No. 66-6 ¶ 8.  This fight involved approximately 34 inmates.  ECF No. 66-5 ¶ 7; ECF No. 66-8 ¶ 6.  SOL staff, including defendants, were busy responding to the emergency situation created by the fights, which included conducting investigations, writing reports, and treating injuries.  ECF No. 66-5 ¶ 7; ECF No. 66-8 ¶ 7; ECF No. 66-6 ¶ 9.

Plaintiff declares that, in the wake of the second riot, more Black and Northern Hispanic inmates were brought to, respectively, Chow Halls 3 and 4.  ECF No. 69-1 ¶ 24.  Plaintiff further declares that, as this measure was carried out, he informed defendants Maloney, Orrick, Jessup, and Parks that he needed medical attention and that the toilet was overflowing.  *Id.* ¶ 25.

According to plaintiff, he was escorted to the clinic after two hours.  ECF No. 69-1 ¶ 26.  Defendant Harmer examined him.  ECF No. 66-7 ¶ 3.  In her declaration, Harmer states that she did not suspect a serious injury or fracture because she "did not see any obvious deformities or signs of trauma consistent with a fracture."  *Id.*  Plaintiff concedes that, because Harmer is not a doctor, she "could not have known that [he] had a broken wrist other than the fact that [he] told her his wrist was broken."  ECF No. 69-2 ¶ 18; *see also* ECF No. 66-7 ¶ 3.  Harmer states, and plaintiff concedes, that she gave plaintiff a sling.  *Id.*; *see also* ECF No. 69-2 ¶ 17.  Further, Harmer states that she offered plaintiff "over-the-counter pain relief pills," but that he refused them.  ECF No. 66-7 ¶ 3.  Plaintiff seems to dispute this assertion.  ECF No. 69-2 ¶ 17.  Additionally, Harmer declares that, as an RN, she lacks "authority or ability to prescribe prescription medication."  ECF No. 66-7 ¶ 3.  Harmer adds that she released plaintiff back into custody with instructions to return to the clinic the next morning if the pain persisted.  *Id.* ¶ 4.

/////

| | |
|---|---|
| 1 | Plaintiff declares that he returned to Chow Hall 3, where the toilet was still out of order. |
| 2 | ECF No. 69-1 ¶ 28. He adds that he had to sleep on top of tables without bedding, and that he |
| 3 | was in "extreme pain." *Id.* ¶¶ 28–29. Plaintiff also declares that he constantly asked defendants |
| 4 | Maloney, Orrick, Jessup, and Parks to have the toilet repaired so that Black inmates could have a |
| 5 | working toilet like Northern Hispanics in Chow Hall 4. *Id.* ¶ 29. Plaintiff claims that these |
| 6 | defendants told him that "they had nothing coming." *Id.* |

Plaintiff declares that he returned to Chow Hall 3, where the toilet was still out of order. ECF No. 69-1 ¶ 28. He adds that he had to sleep on top of tables without bedding, and that he was in "extreme pain." *Id.* ¶¶ 28–29. Plaintiff also declares that he constantly asked defendants Maloney, Orrick, Jessup, and Parks to have the toilet repaired so that Black inmates could have a working toilet like Northern Hispanics in Chow Hall 4. *Id.* ¶ 29. Plaintiff claims that these defendants told him that "they had nothing coming." *Id.*

The next day, plaintiff was escorted back to the clinic. ECF No. 69-1 ¶ 30; ECF No. 66-7 ¶ 5. His wrist was X-rayed and he was diagnosed with a fractured wrist. ECF No. 66-7 ¶ 5; ECF No. 69-1 ¶ 30. Plaintiff declares that a doctor "recommended immediate surgery which required that [he] be transported to an outside hospital." *Id.* ¶ 31.

Plaintiff declares that defendant Parks subsequently put him in administrative segregation based on his suspected participation in the first riot. *Id.* ¶ 32. Accordingly to plaintiff, "[o]n March 11, 2005, almost (2) days after [he] had broken his wrist, he was finally taken to an outside hospital, where surgery was performed to fix his broken wrist." *Id.* ¶ 33.

### B. Procedural Background

The operative pleading in this case is the third amended complaint. ECF No. 41. Therein, plaintiff asserts an Eighth Amendment claim for deliberate indifference, as well as equal protection and due process claims. *Id.* at 11–12. He bases his claim of deliberate indifference on the following events: (1) the toilet's inoperability and his slip and fall; (2) the two-hour delay in taking him to see Harmer; (3) the allegedly inadequate medical care Harmer gave him; and (4) the two-day delay in taking him to the hospital for surgery. *Id.* at 7–10. He bases his equal protection and due process claims on the alleged fact that, unlike Northern Hispanics in Chow Hall 4, Blacks in Chow Hall 4 lacked a working toilet.[1] *Id.*

/////

---

[1] Plaintiff bases his due process claim on the same facts on which bases his equal protection claim. *See* ECF No. 41 at 11–12. Therefore, this claim will be treated an equal protection claim. *See Connecticut v. Gabbert*, 526 U.S. 286, 293 (1999) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of "substantive due process."'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

Defendants generally argue that plaintiff's Eighth Amendment claim fails because the inadequate sanitation, treatment delays, and misdiagnosis of which he complains sound in negligence, which is insufficient to constitute deliberate indifference under the Eight Amendment. *See* ECF No. 66-1 at 3–9. Further, defendants argue that plaintiff's equal protection claim fails because he failed to submit sufficient evidence of discriminatory intent. *Id.* at 9–10.

## II.     Standard of Review

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995) (per curiam).

/////

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 324 (citation omitted) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in [Rule 56(a)], is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in

question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248; *Devereaux*, 263 F.3d at 1076 (citations omitted).  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a reasonable jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

**III.    Legal Analysis**

      **A.    Eighth Amendment—Conditions of Confinement**

The Eighth Amendment does not establish premises liability for negligence leading to a slip and fall.  Rather, the Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Where the plaintiff challenges his conditions of confinement, he must make

two showings. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Second, the plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 298).

Regarding the objective prong, extreme deprivations are required to make out a conditions-of-confinement claim; "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson*, 217 F.3d at 731 (citations omitted). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Id.*

Regarding the subjective prong, "an Eighth Amendment violation requires a showing that the subjective state of mind of the prison officials was culpable." *Id.* at 733 (citing *Wilson*, 501 U.S. at 298–99). For the subjective state of mind of the official to be culpable, the official must have acted with "deliberate indifference." *Id.* (citing *Wilson*, 501 U.S. at 303). "The deliberate indifference standard requires the plaintiff to prove that 'the official knows of and disregards an excessive risk to inmate health or safety . . . .'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" *Johnson*, 217 F.3d at 734 (quoting *Farmer*, 511 U.S. at 842).

### 1. <u>**Clogged, Overflowing Toilet**</u>

Objectively, minor deprivations suffered for short periods usually are not sufficiently serious to constitute an Eighth Amendment violation. *See Johnson*, 217 F.3d at 732. However, "substantial deprivations of shelter, food, drinking water, and sanitation" may be sufficiently

serious despite a shorter duration." *Id.* Thus, on the one hand, "toilets can be unavailable for some period of time without violating the Eighth Amendment." *Id.* at 733; *see also Murillo v. MacDonald*, 536 F. App'x 753 (9th Cir. 2013) (unpublished memorandum) ("[T]he short-term deprivation of bathroom facilities, without more, is not sufficiently grave to form the basis of an Eighth Amendment violation." (citing *Wilson*, 501 U.S. at 298)). But, on the other hand, the "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (citing cases).

How long an inmate may be deprived of sanitary toilets before the deprivation becomes sufficiently serious is unsettled. This is unsurprising considering that "[c]onditions-of-confinement cases are highly fact-specific." *Lamb v. Howe*, No. 15-5526, 2017 WL 318790, at *5 (6th Cir. Jan. 23, 2017); *see also Johnson*, 217 F.3d at 731. Yet the Ninth Circuit has provided some guidance.

In *Anderson*, the court indicated that depriving an inmate of a sanitary toilet for a night may be insufficiently serious to support a conditions-of-confinement claim. *Cf.* 45 F.3d at 1313–14. There, mentally ill and suicidal inmates sought to enjoin the prison's practice of confining them to a ten-by-ten-foot safety cell. *Id.* at 1312–13. The cell had a "pit toilet with a grate," which the inmates testified "was encrusted with excrement and urine." *Id.* at 1313. Prison officials shackled one inmate to the grate "all night" after he tried to kill himself, and other inmates for shorter periods of time. *Id.* The district judge denied the inmate's challenge to the practice and the *Anderson* court affirmed. *Id.* The court reasoned that "the safety cell was used to control violent inmates, and . . . the inmates were confined to the safety cell only for short periods of time." *Id.* at 1314 (citation omitted).

By contrast, depriving inmates of sanitary toilets for longer than a night, coupled with other deprivations, may be sufficiently serious to support a conditions-of-confinement claim. In *Johnson*, a group of inmates sued prison officials over the conditions that they faced while confined to a yard for four days after a large riot. 217 F.3d at 729. On the first night, they had to lie facedown on the yard without access to a toilet, causing them to soil and/or wet themselves.

9

*Id.* at 730. The following day, prison officials took two portable toilets to the yard, though the inmates asserted that they "could not meet the demand of so many prisoners and were often unusable." *Id.* Sometime later that day, the sanitation situation improved "when a few of the institution's indoor toilet facilities that had been damaged during the riot were repaired and made available to the inmates." *Id.*

The district court granted summary judgment to the defendants on the inmates' Eighth Amendment claim. *Id.* at 729. The *Johnson* court reversed, reasoning that the inmates' evidence, if believed, showed the following: (1) they received inadequate protection from the elements, which included temperatures as high as 94 degrees, which caused them to suffer heat-related illnesses; (2) they received inedible food and insufficient drinking water for four days; and (3) they received inadequate access to toilets, which caused them to soil themselves with no way to clean themselves. *Id.* at 729, 732. In relevant part, the court held that this evidence sufficed to create a triable issue regarding whether the inmates' deprivations were "sufficiently serious to satisfy the objective component of an Eighth Amendment claim." *Id.* at 732.

Other Ninth Circuit cases are consistent with *Johnson*. One panel reversed the dismissal of an inmate's complaint alleging deliberate indifference to serious health hazards, including inoperative toilets, on a disciplinary segregation yard. *Hearns v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005). In *Hearns*, the plaintiff alleged that the yard had "no working toilets, rusted and insect filled sinks, [and] stagnant pools of water infested with dead insects." *Id.* at 1039. He further alleged that the yard had no cold water even though its temperature "regularly exceeded one hundred degrees." *Id.* Additionally, he alleged that these conditions prevented him from using the yard to exercise. *Id.* at 1043. The court of appeals rejected the district court's determination that the allegations "were not sufficiently serious to meet the Eighth Amendment's objective component." *Id.* at 1040. In so holding, the court reasoned that the district court "did not take into account the nine month period in which [the plaintiff] was subjected to these conditions of confinement." *Id.* at 1042.

Others cases support a related proposition, i.e., that inoperable toilets causing flooding may violate the Eighth Amendment if the unsanitary condition persists for several days. The

10

Tenth Circuit has reversed a district court's determination that prison officials were entitled to qualified immunity on a plaintiff's Eighth Amendment claim alleging unsanitary flooding caused by inoperable toilets. *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Pertinently, the court reasoned that a thirty-six hour lack of access to working toilets and the concomitant exposure to other inmates' urine and feces was sufficiently serious to state a conditions-of-confinement claim. *Id.* at 974–75. Similarly, the Ninth Circuit has reversed a district court's decision to dismiss a prisoner's Eighth Amendment claim for "deliberate indifference to his health and safety arising from allegedly unsanitary conditions." *Arellano v. Ojeda*, 660 F. App'x 552 (9th Cir. 2016) (unpublished memorandum). The plaintiff alleged that "the toilet in his solitary confinement cell clogged and overflowed for a period of several days, and defendants failed adequately to address the sanitation issue[.]" *Id.* In holding that these allegations stated a cognizable deliberate indifference claim, the court reasoned that subjection "of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Id.* at 552–553 (citation omitted).

In this case, as in *Anderson*, plaintiff was exposed to an unsanitary toilet for one night. Moreover, it occurred in the context of a riot. The riot took place on March 9, 2005, and plaintiff was taken to administrative segregation the next day. *Supra* at 2, 4. While the experience was undoubtedly disturbing, the record relied on by plaintiff does not show that the clogged, overflowing toilet in Chow Hall 3 was sufficiently serious to satisfy the objective prong of a conditions-of-confinement claim. To the contrary, plaintiff's exposure to the unsanitary toilet was even less severe than the inmate's in *Anderson* because plaintiff was not shackled to the toilet. Moreover, plaintiff was taken from Chow Hall 3 to see Nurse Harmer, further lessening the exposure. Plaintiff's only evidence is that he was confined to Chow Hall 3 overnight as a temporary response to an emergency situation. Indeed, more violence had erupted during time plaintiff was confined there.

This case presents facts quite different from the cases finding that a deprivation of inmates of toilets for a night, in conjunction with other deprivations, may be sufficiently grave to support an Eighth Amendment conditions-of-confinement claim. Here, unlike in *Johnson*, plaintiff had

11

access to the unsanitary toilet in Chow Hall 3 on his first night, and there is no evidence that he soiled and/or wetted himself or that he was fastened to the toilet in some fashion that left him exposed to the effluent. Nor is there any evidence that defendants subjected plaintiff to other serious hardships while he was in Chow Hall 3, such as extreme heat, inedible food, or lack of access to water. *Hearns* is also distinguishable. While the inmate in *Hearns* lacked access to a sanitary toilet on the exercise yard for nine months, plaintiff lacked access to a sanitary toilet in the Chow Hall for one night. While there is evidence that the toilet flooded onto the floor in Chow Hall 3, plaintiff has not submitted evidence of serious health hazards, such as prolonged duration, pest infestations or extreme heat. Rather, the crux of plaintiff's complaint is that he slipped and fell.

This case is also distinguishable from the cases proposing that inoperable toilets causing flooding may violate the Eighth Amendment if the condition persists for several days. The inmate in *DeSpain* was exposed to nonworking toilets and other inmates' urine and feces for thirty-six hours, whereas plaintiff experienced similar conditions for about one day. Furthermore, whereas the plaintiff in *Arellano* alleged that his toilet backed up and overflowed for a period of several days, plaintiff's evidence shows that he was exposed to the clogged, overflowing toilet in Chow Hall 3 for about a day.

Plaintiff has not presented evidence upon which a reasonable jury could find that he was exposed to unsanitary conditions of such duration to pose a serious threat to his safety or that defendants' response to the unsanitary toilet displayed a sufficiently culpable state of mind, i.e., deliberate indifference. To the contrary, the record shows that the confinement was necessary for inmate safety in the face of the riot and it last only for the length of time necessary to restore order. For a prison official to be deliberately indifferent to a prisoner's conditions of confinement, he must "knowingly and unreasonably disregard[] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846; *accord Anderson*, 45 F.3d at 1315. Thus, "prison officials who actually [know] of a substantial risk to inmate health or safety may be found free from liability if they [respond] reasonably to the risk, even if the harm ultimately [is] not averted." *Farmer*, 511 U.S. at 844. Although plaintiff declares that he told most of the defendants about the unsanitary

12

toilet, plaintiff presents no evidence of deliberate indifference. He states that he informed Maloney, Orrick, Jessup, and Parks that the toilet was out of order, but he does not dispute that the unsanitary condition arose in the midst of two riots that taxed the resources of SOL officials. *See supra* at 3. Furthermore, defendants declare, and plaintiff does not dispute, that Black and Northern Hispanic inmates suspected of rioting had to be separated to prevent further conflict. ECF No. 66-4 ¶ 5; ECF No. 66-5 ¶ 4; ECF No. 66-6 ¶ 4. Under these circumstances, the approximately one day exposure to the unsanitary toilet does not amount to deliberate indifference to a known serious risk to the plaintiff.

In sum, plaintiff's evidence fails to satisfy the objective and subjective prongs for his deliberate indifference claim based on exposure to the clogged, overflowing toilet. Accordingly, summary judgment should be granted to defendants on this claim.

### 2. **Slip and Fall**

Plaintiff asserts a deliberate indifference claim based on slipping and falling on water overflowing from the clogged toilet. As with the other basis for his claim, plaintiff has not demonstrated deliberate indifference.

Federal courts have repeatedly rejected Eighth Amendment claims based on slip and falls. *Coleman v. Sweetin*, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); *Pyles v. Fahim*, 771 F.3d 403, 410 & n.25 (7th Cir. 2014) (collecting cases) ("Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement."). Consistently, the Ninth Circuit has stated that complaints about "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also Gilman v. Woodford*, No. 06-16157, 2008 WL 686740, at \*1 (9th Cir. Mar. 12, 2008) (dismissing inmate's complaint alleging Eighth Amendment violation based on leaky roof and slippery floors). *But cf. Frost v. Agnos*, 152 F.3d 1124, 1128–29 (9th Cir. 1998) (disabled inmate on crutches who frequently fell on slippery shower floors created a triable issue on whether the conditions of his confinement violated the Eighth Amendment).

13

Here, plaintiff's deliberate indifference claim based on his slip and fall fails as a matter of law. Although plaintiff declares that he slipped and fell on water and waste overflowing from the clogged toilet, courts have consistently rejected such claims. Plaintiff has presented no compelling reason to deviate from this line of authority. He slipped and fell approximately 2.5 hours after the first riot, during which time defendants were busy responding to the emergency. *See supra* at 2–3. Thus, at best, plaintiff's slip and fall amounts to "mere negligence," which is insufficient to establish deliberate indifference. *Farmer*, 511 U.S. at 835. Accordingly, summary judgment should be granted to defendants on this claim.

### 3. **Medical Needs**

Plaintiff bases his claim for deliberate indifference to medical needs on the following events: (1) the two-hour delay in taking him to see Harmer; (2) the allegedly inadequate medical care Harmer gave him; and (3) the two-day delay in taking him to the hospital for surgery.

To state an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must adequately allege that: (1) he had a serious medical need; and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Defendants do not argue that plaintiff's broken wrist was not a serious medical need. Therefore, the issue is whether defendants were deliberately indifferent to plaintiff's broken wrist.

For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[] of and disregard[] an excessive risk to inmate health.'" *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting *Farmer*, 511 U.S. at 837). Furthermore, a prison official's knowing disregard of an inmate's serious medical need must cause the inmate harm. *See Jett*, 439 F.3d at 1096. However, the harm need not be "substantial." *Id.* Additionally, "prison officials who actually [know] of a substantial risk to inmate health or safety may be found free from liability if they [respond] reasonably to the risk, even if the harm ultimately [is] not averted." *Farmer*, 511 U.S. at 844.

Here, plaintiff has not presented evidence upon which a reasonable fact finder could conclude that the two-hour delay in taking him to see Harmer after the slip and fall amounted to

14

deliberate indifference.  In the context of his fall and the surrounding circumstances, the two-hour delay was "minor" and plaintiff has not shown that it "caused any harm." *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam).  Furthermore, the two-hour delay was reasonable under the circumstances.  The second riot erupted shortly after plaintiff fell and defendants were busy responding to the emergency.  *Supra* at 3.

Likewise, plaintiff does not present evidence upon which a reasonable jury could conclude a two-day wait for surgery constituted deliberate indifference.  Plaintiff's only relevant declaration is that "almost two (2) days after [he] had broken his wrist, he was finally taken to an outside hospital, where surgery was performed to fix his broken wrist." ECF No. 69-1 ¶ 33; *see also* ECF No. 69-2 ¶ 19.  This bare declaration does not establish nor support a reasonable inference that the delay harmed plaintiff.  Moreover, plaintiff does not declare that the delay caused him "unnecessary . . . infliction of [further] pain." *Berg v. Prison Health Services*, 376 F. App'x 723, 724 (9th Cir. 2010).  Therefore, even if the two-day delay contravened the doctor's order for "immediate surgery," no reasonable juror could find that defendants disregarded an excessive risk to his health. [2]

Nor does plaintiff's evidence show that Harmer's alleged failure to provide plaintiff with adequate medical care constituted deliberate indifference.  For Harmer to have been deliberately indifferent, she would have had to have been aware of facts from which she could have inferred that plaintiff's wrist was broken, and she would have had to have "draw[n] the inference." *Id.* (citing *Farmer*, 511 U.S. at 837).  However, Harmer declares that she did not suspect a serious injury or fracture based on her evaluation, and plaintiff concedes that she could not have known that he had a broken wrist other than his self-diagnosis.  Furthermore, while the parties dispute whether Harmer offered plaintiff over-the-counter painkillers, there is no evidence rebutting Harmer's statement that she lacked authority to prescribe prescription pain medication.

/////

---

[2] Indeed, plaintiff's evidence fails to establish that defendants were "responsible for" scheduling his surgery, *McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997), or that they were even "aware of" the need for it, *Peralta*, 744 F.3d at 1086 (citing *Farmer*, 511 U.S. at 837).

1  Additionally, Harmer told plaintiff to return to the clinic the following day if his pain persisted.
2  He heeded her advice, whereupon a doctor diagnosed his wrist fracture. At best, then, plaintiff
3  describes a case of negligence in the diagnosis and treatment of his wrist fracture, which fails to
4  "state a valid claim [for deliberate indifference] under the Eighth Amendment." *Estelle*, 429 U.S.
5  at 106; *see also Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013)
6  (citation omitted) ("Even gross negligence is insufficient to establish deliberate indifference to
7  serious medical needs.").

8  In short, plaintiff has not produced evidence upon which a reasonable jury could rely in
9  concluding that defendants were deliberately indifferent to his medical needs. Accordingly,
10  defendants should be granted summary judgment on plaintiff's deliberate indifference claims.[3]

### B. Fourteenth Amendment—Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* (citation omitted).

Defendants do not contest that plaintiff, as a Black man, is a member of a protected class. Therefore, the issue is whether defendants purposefully discriminated against him in confining Black inmates to Chow Hall 3 (nonworking toilet) and Northern Hispanic inmates to Chow Hall 4 (working toilet).

"Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted). "It

---

[3] Because plaintiff cannot establish that defendants violated the Eighth Amendment, it is unnecessary to consider their argument that they are entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

16

1 implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* Courts may look to the totality of the circumstances to ascertain whether "invidious discriminatory purpose" animates a state official's challenged action. *See Washington v. Davis*, 426 U.S. 229, 242 (1976). Consequently, the mere fact that an act has a disproportionate impact on one group is insufficient to show discriminatory purpose. *Id.* at 239.

Plaintiff does not present evidence establishing that defendants purposefully discriminated against the Black inmates in confining them to Chow Hall 3. Rather, the evidence compels the conclusion that only Parks made the decision challenged by plaintiff. Thus, plaintiff's equal protection claim necessarily fails as to the other defendants. Further, the evidence demonstrates that Parks was acting in the context of a riot to protect inmates from additional violence. He confined Black inmates to Chow Hall 3 not "because of" this characteristic, *see Feeney*, 442 U.S. at 279, but because of the urgent need to separate the hostile groups to halt the fighting and "to prevent further violence." ECF No. 66-4 ¶ 5. On the record before the court, a reasonable fact finder could not rely upon plaintiff's evidence to conclude that racial animus rather than inmate safety motivated Park's decision.

Plaintiff suggests that, after he told Parks about the broken toilet, his alleged statement that Black inmates had "nothing coming" shows discriminatory purpose. But plaintiff's complete statement in his declaration in this regard is as follows: "Plaintiff and other black inmates also informed defendant Parks about the toilet not working and the need for several inmates to use a functioning toilet. Defendant Parks responded by saying 'That's what happens when you participate in a riot. You have nothing coming.'" ECF No. 69-1 ¶ 17. The comment indicates frustration over inmates engaged in violence, not animus directed at a class of inmates based on their race, and the reference to "you have nothing coming" is not directed at plaintiff. Nothing in the statement can support a finding or even an inference that Park's actions were the result of racial animus rather than a genuine effort to restore order and prevent more violence.

/////

/////

17

**IV.  Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 66) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  May 16, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE